UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ABDUL K. TAWWAAB <br> 425 2ND STREET NW, 164S <br> WASHINGTON, DC 20001, <br> <br>     Plaintiff, <br> <br> v. <br> <br> VIRGINIA LINEN SERVICES, INC. <br> 6101 SHERIFF ROAD <br> LANDOVER, MD 20788 <br> <br> and <br> <br> LEE GWALTNEY <br> 6101 SHERIFF ROAD <br> LANDOVER, MD 20788 <br> <br> and <br> <br> CHUCK MILLER <br> 6101 SHERIFF ROAD <br> LANDOVER, MD 20788 <br> <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 8:09-cv-00553 (AW) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Abdul K. Tawwaab, for his first amended Complaint, alleges as follows:

**Nature of the Action**

1.  This is an action for damages and equitable relief arising out of Virginia Linen Services Inc.'s unlawful discriminatory and retaliatory discharge of Plaintiff Abdul K. Tawwaab, an African American, who, prior to being fired, held the position of Route Salesman. Virginia Linen Services, Inc. (VLS) terminated Mr. Tawwaab only days

after he complained to his superiors that, while making a routine route delivery to Wakefield Valley Country Club in Westminster, Maryland, he was subjected to racially inflammatory comments and violent race-based death threats involving lynching. After he was fired, Mr. Tawwaab filed a formal complaint with the Equal Opportunity Employment Commission (EEOC), which issued a determination in his favor and thereafter issued a Notice-of-Right-to-Sue. To address this discriminatory and retaliatory conduct by VLS and two of its managers, Lee Gwaltney and Chuck Miller, plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et. seq.*, and The Civil Rights Act of 1866, as amended by The Civil Rights Act of 1991, 42 U.S.C. § 1981 *et. seq.*, and seeks damages and declaratory relief.

**Parties**

2.  Plaintiff Abdul K. Tawwaab, an African American , resides at 425 2nd Street NW, 164S, Washington, DC. Mr. Tawwaab was employed by Virginia Linen Services, Inc. at its Landover, Maryland location from approximately October 2005 until he was terminated on November 1, 2006.

3.  On information and belief, Defendant Virginia Linen Services, Inc. (VLS), a subsidiary of Mohenis Services, Inc., is a business incorporated in Virginia with locations throughout the United States. VLS maintains a place of business at 6101 Sheriff Road in Landover, Maryland.

4.  Defendant Lee Gwaltney, a Caucasian male, is employed by VLS as a Regional Vice President. At all relevant times, Mr. Gwaltney oversaw operations at VLS's Landover, Maryland location and acted in the scope of his employment and as an agent of VLS.

5. Defendant Chuck Miller, a Caucasian male, is an employee of VLS. At all relevant times, Mr. Miller served as the General Manager of VLS's Landover, Maryland location and acted in the scope of his employment and as an agent of VLS. Upon information and belief, Mr. Miller was responsible for terminating Mr. Tawwaab.

### Jurisdiction and Venue

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §§ 2000e-5.

### Facts

8. In October 2005, Mr. Tawwaab was hired to work at VLS's Landover, Maryland location as a Route Salesman. In this position, Mr. Tawwaab's responsibilities included picking up soiled linens and delivering clean linens to various VLS customers on an assigned route.

9. On or about October 20, 2006, Mr. Tawwaab made a delivery of linens to Wakefield Valley Country Club, which is also known as Wakefield Valley Golf & Conference Center, and is located at 1000 Fenby Farm Road in Westminster, Maryland. Having been instructed to obtain payment upon delivery, Mr. Tawwaab informed the General Manager of the Country Club, Mr. Brian Walsh, that he needed payment in order to deliver the linens. Mr. Walsh indicated that he did not have the payment available, but that he would have a check the following week.

10. Mr. Tawwaab then called his immediate supervisor, Mr. Kenneth Carter, and explained the situation. Mr. Carter spoke to Lee Gwaltney, the Regional Vice

President, who authorized Mr. Tawwaab to leave the linens without payment, but said that Wakefield Country Club must make payment the following week.

11. After Mr. Tawwaab told Mr. Walsh that he would deliver the linens, Mr. Walsh approached Mr. Tawwaab in an angry manner and began making racially inflammatory comments and death threats to Mr. Tawwaab.

12. Mr. Walsh, who is Caucasian, made a statement to Mr. Tawwaab to the effect of:

> "You know you got a lot of nerve to be up here giving out orders and talking a lot of trash. You are the only black guy up here in Wakefield, County and you know this is 'good ol' boy' country. You know you be bringing all that white linen up here; all we have to do is burn a few holes in a couple of them tablecloths and make a few eyes and use some tape to make a little cone."

13. A waitress at the Country Club witnessed the scene, overheard Mr. Walsh's statements, and told him to stop. However, Mr. Walsh continued and threatened Mr. Tawwaab by stating to the effect of:

> "Then somebody just has to go get a rope and take you out back or find them a tree and hang you."

14. Fearful and humiliated, Mr. Tawwaab immediately departed Wakefield Valley Country Club.

15. On or about October 23, 2006, Mr. Tawwaab reported Mr. Walsh's threatening and racist statements to his supervisors, including defendant Gwaltney and

defendant Miller. Mr. Gwaltney told Mr. Tawwaab that he would investigate the incident and report back to him. However, Mr. Gwaltney never again discussed the incident with Mr. Tawwaab, and never reported the results of any investigation.

16.     Mr. Tawwaab feared returning to the Country Club without assurances that Mr. Walsh would not persist in further racist conduct. He got no such assurances from VLS and, while excused from delivering to the Country Club for one week, was not promised that he would never have to deliver to the Country Club again.

17.     On November 1, 2006, Mr. Tawwaab arrived at work and was told by the Assistant General Manager, Robert Carstens, that the General Manager, defendant Chuck Miller, had decided to terminate him. Mr. Carstens told Mr. Tawwaab that he disagreed with VLS's decision to terminate him. Mr. Carstens stated that had unsuccessfully attempted to convince VLS to retain Mr. Tawwaab.

18.     Mr. Tawwaab's immediate supervisor, Kenneth Carter, also told Mr. Tawwaab that he did not agree with Mr. Miller's decision to fire him, and that he told Mr. Miller that terminating Mr. Tawwaab would have the appearance of being related to his recent complaint about the Wakefield Valley Country Club incident.

19.     VLS never provided Mr. Tawwaab with an explanation for his termination.

20.     Mr. Tawwaab filed charges with the EEOC in February 2007. On July 24, 2008, after finding reasonable cause that VLS violated Mr. Tawwaab's federally protected rights, the EEOC issued a Notice-of-Right-to-Sue letter.

**COUNT I (VLS)**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**DISCRIMINATION, DISCHARGE BASED ON RACE**

21. The allegations of each of the foregoing paragraphs are hereby incorporated by reference.

22. VLS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), by terminating Mr. Tawwaab on account of his race. In so doing, VLS acted with malice or reckless indifference towards Mr. Tawwaab's federally protected rights.

23. At all relevant times, Mr. Tawwaab was an employee within the meaning of 42 U.S.C. § 2000e(f).

24. At all relevant times, VLS was an employer within the meaning of 42 U.S.C. § 2000e(b).

25. At all relevant times, VLS was an employer engaged in commerce within the meaning of 42 U.S.C. § 2000e(g).

**COUNT II (VLS)**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**RETALIATION**

26. The allegations of each of the foregoing paragraphs are hereby incorporated by reference.

27. VLS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by terminating or otherwise retaliating against Mr. Tawwaab because he opposed an activity (racial discrimination and harassment) protected by Title VII of the Civil Rights Act of 1964. In so doing, VLS acted with malice or reckless indifference to Mr. Tawwaab's federally protected rights.

**COUNT III (ALL DEFENDANTS)**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, AS AMENDED BY**
**THE CIVILRIGHTS ACT OF 1991, 42 U.S.C. § 1981**
**DISCRIMINATORY DISCHARGE BASED ON RACE**

28. The allegations of each of the foregoing paragraphs are hereby incorporated by reference.

29. VLS, Mr. Gwaltney, and Mr. Miller (collectively, Defendants) violated The Civil Rights Act of 1866, as amended by The Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.*, by terminating Mr. Tawwaab on account of his race. In so doing, the defendants acted with malice or reckless indifference to Mr. Tawwaab's federally protected rights.

30. In taking these actions, defendants Gwaltney and Miller acted as agents of VLS and within the scope of their employment.

**COUNT IV (ALL DEFENDANTS)**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, AS AMENDED BY**
**THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981**
**RETALIATION**

31. The allegations of each of the foregoing paragraphs are hereby incorporated by reference.

32. Defendants violated The Civil Rights Act of 1866, as amended by The Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.*, by retaliating against Mr. Tawwaab because he opposed an activity (racial discrimination and harassment) protected by The Civil Rights Act of 1866, as amended by The Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* In so doing, defendants acted with malice or reckless indifference to Mr. Tawwaab's federally protected rights.

## Relief Sought

33. As a result of the wrongful and discriminatory practices of defendants, Mr. Tawwaab has suffered loss of income and other benefits and privileges of employment, harm to his career, emotional distress, mental anguish, humiliation, and embarrassment.  Accordingly Mr. Tawwaab seeks the following relief:

a) a declaration that defendants' actions deprived Mr. Tawwaab of his federally protected rights;

b) back pay in an amount to be proved at trial;

c) reinstatement, or, in the alternative front pay in an amount to be proved at trial;

d) compensatory damages for emotional distress, humiliation, embarrassment, harm to his career, loss of income, and mental anguish in an amount to be proved at trial;

e) punitive damages in an amount to be proved at trial;

f) costs and expenses of this action, including, but not limited to, reasonable attorneys' fees and litigation costs; and

g) such other relief as the Court finds necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a trial by jury.

Dated:  May 11, 2009

Respectfully submitted,

/s/ Anthony Herman
Anthony Herman (Maryland Bar No. 22939)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004-2401
Phone: (202) 662-5280
Fax:    (202) 778-5280
e-mail:  aherman@cov.com

- 9 -

                Susan Huhta (Maryland Bar No. 14547)
                WASHINGTON LAWYERS'
                COMMITTEE FOR CIVIL RIGHTS &
                URBAN AFFAIRS
                11 Dupont Circle, NW, Suite 400
                Washington, DC 20036
                Phone: (202) 319-1000
                Fax:    (202) 319-1010
                e-mail:  susan_huhta@washlaw.org

                *ATTORNEYS FOR PLAINTIFF*
                *ABDUL K. TAWWAAB*